# State of Vermont v. Randolph L. Chambers

[477 A.2d 974]

No. 82-575

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed May 11, 1984

378

*John J. Easton, Jr.,* Attorney General, *Susan R. Harritt,* Assistant Attorney General, and *Donna Hepler* (On the Brief), Montpelier, for Plaintiff-Appellee.

*Nancy E. Kaufman,* Montpelier, for Defendant-Appellant.

**Peck, J.** Defendant, Randolph Chambers, appeals from a conviction in the Vermont District Court, Unit No. 5, Washington Circuit, for assault and robbery. 13 V.S.A. § 608(b). We affirm.

Defendant presents three issues for review. First, he contends that it was error to deny his motion for mistrial when a State's witness made a spontaneous comment relating to defendant's past incarceration. Second, he charges error in the court's instructions to the jury regarding a witness' testimony. Third, defendant alleges that the court relied on inaccurate information during sentencing.

After driving from Connecticut, defendant and four other individuals decided to rob the Central Market in Barre, Vermont. When the five arrived at the market, defendant and one of his companions left the car and entered the store. The companion was carrying a .22 caliber rifle. A store employee and two customers were robbed of their wallets, and the cash register was emptied. Both defendant, who is missing part of his left arm, and his companion were positively identified by the three victims in the store who later testified at trial. While they were fleeing from the scene, the pair were also identified by two witnesses outside the store.

Three of defendant's companions confessed to their part in the assault and robbery and gave statements to the police im-

plicating defendant as a principal. One of the participants (hereinafter "witness") was granted full immunity by the State, 12 V.S.A. § 1664, and testified against defendant at trial.

On cross-examination of this witness, defense counsel attempted to elicit testimony about a letter the witness had written to defendant. The object of this line of questioning was to point out statements made to defendant supposedly exculpating him from the robbery and telling him that the witness would not testify against him at trial. On redirect, the State inquired into the motives for writing the letter in an attempt to rehabilitate its witness. In response to the State's question: "Well, what did your letter say?" the witness responded: "I said that—that I understood his predicament and that if I was in his, his shoes, I would—I would do everything possible to, to get out. And that I understood that he had just done seven years in jail—." Defendant objected promptly and moved for a mistrial; the court sustained the objection on the grounds that the answer was unresponsive, but denied the motion for a mistrial. The court then struck the answer and instructed the jury not to consider it at any time during the trial. In addition, an instruction was later given at the close of the evidence advising the jury not to consider any testimony stricken from the record. At no point was the answer repeated to the jury. The State asked no further questions of the witness.

Defendant claims that the answer was prejudicial since it improperly put evidence of a prior conviction before the jury. He maintains that the statement was sufficiently prejudicial to require a mistrial, and accordingly that the court erred in denying his motion. We disagree.

 Defendant accuses the State of "deliberately or recklessly" eliciting the improper testimony from the witness. The record does not sustain this characterization. Defendant had "opened the door" to an inquiry into the contents of the letter by attempting to use statements therein to impeach the witness. It was therefore permissible for the State to follow up that questioning by clarifying the statements used for impeachment on redirect examination, *State* v. *Settle*, 141 Vt. 58, 62, 442 A.2d 1314, 1316 (1982); there is no indication that the

State's question was deliberately intended to provoke the improper answer. When an answer is unresponsive, the proper remedy lies within the discretion of the trial judge. *State* v. *Morse*, 127 Vt. 137, 140, 241 A.2d 328, 331 (1968). It is well settled that motions for mistrial are likewise in the sound discretion of the court. *State* v. *Covell*, 142 Vt. 197, 199, 453 A.2d 1118, 1119 (1982); *State* v. *Blaise*, 138 Vt. 430, 436, 418 A.2d 27, 31 (1980). In order to support a claim of abuse of discretion, defendant must show that it was either totally withheld, or exercised on grounds clearly untenable or unreasonable. *State* v. *Covell, supra,* at 199, 453 A.2d at 1119. Defendant has not satisfied that responsibility. Moreover, to constitute reversible error, a denial of a motion for mistrial must result in prejudice to the moving party. *Id.* The burden of showing such prejudice is on the moving party. *Id.* On review we will examine the matter in the context of the entire proceedings. *Id.*

There was strong evidence of defendant's participation in the robbery, through identification by eyewitnesses who were in close proximity to him during the robbery, and by his fellow participant who testified for the State. Therefore, absent a showing of any intentional wrongdoing by the State, we are satisfied that there has been no substantial prejudice to the defendant. See *State* v. *Berard*, 132 Vt. 138, 145–46, 315 A.2d 501, 507, *cert. denied,* 417 U.S. 950 (1974).

■ Defendant having failed to meet his burden of showing prejudice, we find no reversible error in the denial of his motion. See *State* v. *Baldwin*, 140 Vt. 501, 514, 438 A.2d 1135, 1142 (1981). In any event, any prejudice defendant may have suffered initially was cured by the prompt cautionary instruction to the jury. *State* v. *Foy*, 144 Vt. 109, 116–17, 475 A.2d 219, 224 (1984).

■ Defendant next attacks an instruction concerning the resolution of conflicting testimony given in the court's charge to the jury. In his brief, defendant excerpted the following language from the charge:

> Witnesses may be absolutely honest and yet disagree in regard to details. And it is for you to say after considering all the evidence what weight you will give to the testimony of each. It is your duty to reconcile conflicting

testimony, if you can, upon the legal theory all witnesses are presumed to have testified truthfully.

Defendant claims that, because he presented no witnesses of his own, the instruction created a presumption of guilt and places upon him the burden to prove his innocence in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. Defendant's first obstacle in assigning this error is his failure to object to the instruction below. Defendant's lack of objection to the charge precludes review on appeal unless there appears glaring error. V.R.Cr.P. 30; *State* v. *Billado,* 141 Vt. 175, 187–88, 446 A.2d 778, 785 (1982). When viewed in its entirety, *State* v. *Joyce,* 139 Vt. 638, 640, 433 A.2d 271, 273 (1981), if the charge is well balanced and fair, there is no glaring error. *Billado, supra,* at 188, 446 A.2d at 785. We will not limit our review of a charge to piecemeal excerpts selected by the challenging party.

■ The charge given by the court below, examined in its entirety, included thorough instructions relating to the presumption of innocence of the defendant, the State's obligation to prove guilt beyond a reasonable doubt, and the jury's role in weighing the credibility of witnesses. It was "well balanced and fair." Therefore, we hold that if there was error it was not glaring, that overall the charge was fair, and that the defendant was not prejudiced; accordingly, there was no violation of due process. *Cupp* v. *Naughten,* 414 U.S. 141, 147–48 (1973), *quoted with approval in United States* v. *Frady,* 456 U.S. 152, 169 (1982).

In passing, we note that this Court has had occasion to rule on similar instructions in the past. Indeed, in his assignment of error, defendant relied on *Mullaney* v. *C. H. Goss Co.,* 97 Vt. 82, 122 A. 430 (1923). Inasmuch as *Mullaney,* which was a civil case, involved an instruction that statements made in court and those made out of court may be reconciled on the basis that in-court statements are presumed to be true, *id.* at 86, 122 A. at 432, it is inapplicable to this case.

In the last issue briefed on appeal, defendant claims that the court relied on inaccurate and unverified information in arriving at defendant's sentence. The disputed information concerns defendant's record of prior convictions contained in the presentence investigation report (P.S.I.) presented to the

court. The record was obtained from the Connecticut Department of State Police and was apparently in the form of a computer printout sheet of a type commonly used by law enforcement agencies. The record listed numerous convictions for burglary and larceny related offenses, as well as one robbery conviction and a conviction for "Escape from Custody, reduced to Robbery."

At the sentencing hearing, defendant denied ever having been convicted of robbery, and specifically challenged the escape reduced to robbery charge. The printout sheet was not a certified copy of defendant's record of convictions, nor was the printout corroborated by any other certified documents. Defendant argues, therefore, that the accuracy of the report was thrown into serious question and that the report should not have been considered by the court prior to sentencing. For the reasons set forth below, we disagree.

 In preparing a P.S.I., a probation officer must endeavor to "provide the sentencing court with succinct and precise information upon which to base a rational sentencing decision . . . ." *State* v. *Rathburn,* 140 Vt. 382, 388, 442 A.2d 452, 455 (1981). The report should include any prior criminal record of the defendant and information on his characteristics, financial condition, behavior or any other factors necessary to enable the court to impose an appropriate sentence. V.R.Cr.P. 32(c)(2). See *United States* v. *Burton,* 631 F.2d 280, 282 (4th Cir. 1980).

 Although the range of information contained in a P.S.I. is necessarily quite broad, and is not restricted by the rules of evidence, *State* v. *Morse,* 126 Vt. 314, 319–20, 229 A.2d 232, 236–37 (1967) (quoting *Williams* v. *New York,* 337 U.S. 241, 247 (1949)), sentencing courts must nevertheless observe the following limitations: First, the information must be accurate. See *Townsend* v. *Burke,* 334 U.S. 736, 741 (1948); *United States* v. *Malcolm,* 432 F.2d 809, 816 (2d Cir. 1970); *People* v. *Peacock,* 109 Ill. App. 3d 684, 685–86, 440 N.E.2d 1260, 1262 (1982). Second, the court may not consider mere hearsay allegations of criminal conduct for which the defendant was never charged, tried or convicted. *State* v. *Williams,* 137 Vt. 360, 364, 406 A.2d 375, 377 (1979), *cert. denied,* 444

U.S. 1048 (1980). Contra 18 U.S.C. § 3577; *United States* v. *Marshall,* 719 F.2d 887, 891 (7th Cir. 1983).

 A defendant has the burden to show that the information is materially inaccurate and that the judge relied on the information at sentencing. *United States* v. *Garcia,* 693 F.2d 412, 415 (5th Cir. 1982); *Farrow* v. *United States,* 580 F.2d 1339, 1359 (9th Cir. 1978); *United States* v. *Stevens,* 559 F. Supp. 1007, 1012 (D. Kan. 1983). "Merely alleging that the PSI report contained inaccurate or inappropriate information does not sufficiently call into question a violation of due process in sentencing." *Garcia, supra,* at 415.

In the present case, defendant had knowledge of the contents of the conviction report for several months prior to sentencing. At no time during this interval did he take steps to obtain information to contradict that contained in the P.S.I. In fact, he refused to cooperate with the probation officer who compiled the report and refused to sign a release required by the Connecticut authorities which would have enabled the officer to obtain data that might refute information found in the report.

 V.R.Cr.P. 32(c)(3) requires disclosure of all sentencing information to the defendant at least seven days prior to sentencing. This provision goes beyond the requirements of 28 V.S.A. § 204(d) by *requiring* disclosure, and is intended to give a defendant an opportunity to evaluate and determine the accuracy of the report so that he may effectively challenge it if necessary. See Reporter's Notes, V.R.Cr.P. 32 (1982 amendment). Defendant failed to avail himself of that opportunity here. See, e.g., *People* v. *Lutz,* 109 Cal. App. 3d 489, 496, 167 Cal. Rptr. 309, 312 (1980) (defendant's refusal to be interviewed by probation officer and failure to present documents or witnesses to refute information in P.S.I. constituted waiver of right to challenge its accuracy).

 Having failed, in fact having virtually refused, to avail himself of the opportunity to correct any claimed defect in the report, he cannot now rely on what is no more than an alleged inaccuracy in order to put the trial court in error. The sentence itself, being discretionary, was within the statutory limits; there is no showing of an abuse of discretion. Accord-

ingly, we defer to the sentencing court. *State* v. *Cyr*, 141 Vt. 355, 358, 449 A.2d 926, 927 (1982).

*Affirmed.*