47 F.3d 1166
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Henderson HOPKINS, Defendant-Appellant.
 No. 94-5232.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Jan. 24, 1995.
Decided: Feb. 14, 1995.
 
 Randolph M. Lee, Charlotte, NC, for appellant.
 Mark T. Calloway, United States Attorney, Robert J. Higdon, Jr., Assistant United States Attorney, Charlotte, NC, for appellee.
 Before HAMILTON, LUTTIG, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Mark Henderson Hopkins was convicted of conspiracy to possess marijuana with intent to distribute, 21 U.S.C. Sec. 846 (1988), possession of marijuana with intent to distribute, 21 U.S.C. Sec. 841(a)(1) (1988), and use of a firearm during a drug trafficking crime, 18 U.S.C.A. Sec. 924(c)(1) (West Supp.1994). Hopkins appeals both his conviction and sentence, alleging that the district court allowed inadmissible evidence to be used at trial and at sentencing, that his counsel at trial was ineffective in failing to object to the admission of this evidence, and, finally, that his conviction for the firearm offense was not supported by the evidence. For the reasons discussed below, we affirm.
 
 
 2
 Hopkins was indicted on charges that between January and April of 1992, he entered into a conspiracy with Michael Hope, and others, to purchase and sell marijuana. Hope testified that Hopkins hired him to transport marijuana from Tucson, Arizona, to Charlotte, North Carolina. Hope and Hopkins would travel in Hopkins's Buick to Tucson, and stay in a motel until Hopkins could buy the marijuana from his suppliers. Hope also testified that Hopkins carried a gun with him to Arizona, and when leaving the motel to make the purchase. After the purchase, Hopkins would fly back to Charlotte, and Hope would drive the car to North Carolina with the drugs. Hope testified that he made five such trips with Hopkins, four of which involved the purchase and transport of 100 pounds of marijuana, while the other trip involved sixty pounds.
 
 
 3
 In April of 1992, Hope was arrested in Memphis, Tennessee, in possession of 104 pounds of marijuana, a handgun, and more than $10,000. Hope told police that the contraband belonged to Hopkins, and agreed to cooperate with police in securing his arrest. Hope delivered the marijuana to Hopkins's apartment wearing an audio recording device. When Hopkins opened the trunk of the car, he was arrested.
 
 
 4
 A search of Hopkins's apartment produced $26,000 and traces of marijuana locked in a fireproof safe, a nine millimeter pistol with a loaded magazine, assorted magazines and ammunition, 1130.2 grams of marijuana, a marijuana cigarette, and drug paraphernalia, including rolling papers, lighters, a marijuana pipe, triple beam scales, plastic wrap, duct tape, and plastic ziplock bags.
 
 
 5
 A federal grand jury returned two separate indictments against Hopkins. In the first bill, Hopkins was named with seven others as members of a conspiracy, dating from June 1988 to November 1992, to possess and distribute marijuana. 21 U.S.C. Sec. 841(a)(1). The second indictment, which resulted in the conviction at issue, charged Hopkins with conspiring with Hope and others to possess and distribute marijuana during January through April of 1992. Hopkins was also charged with the possession of and intent to distribute marijuana. Finally, Hopkins was charged with three counts of possession and use of a firearm in connection with drug trafficking, 18 U.S.C.A. Sec. 924(c)(1), twice for separate occasions in April of 1991,[1] as well as once for the day of his arrest in April of 1992. Hopkins was tried on the second indictment, and was convicted on three counts--conspiracy, possession, and the April 1992 firearm charge. Prior to sentencing, the United States moved to continue the first indictment, hoping to use the behavior charged in it as relevant conduct for calculating Hopkins's sentence. The Government explained that "[i]f the Probation Office does include this relevant conduct in its calculation and if the Court sentences the [D]efendant accordingly, ... a dismissal of the remaining indictment ... may be appropriate." (J.A. at 169).
 
 
 6
 The Presentence Report included as relevant conduct drug transactions carried out by Hopkins prior to dates covered by his conviction. Such conduct included Hopkins's purchase of approximately 400 kilograms of marijuana from David Christenbury from 1988 to 1990, Hopkins's sale of approximately eight kilograms of marijuana to Christenbury between March 1991 and early 1992, and Hopkins's possession of a nine millimeter and a .25 caliber pistol during a drug transaction.
 
 
 7
 Hopkins contends on appeal that the admission of the evidence at trial relating to conduct that occurred prior to January 1992, and that was covered by a separate pending indictment, was improperly prejudicial under Fed.R.Evid. 404(b). Moreover, Hopkins asserts that the failure of his lawyer to object to this evidence rendered his assistance ineffective. He further claims that the court's consideration of this evidence as relevant conduct at sentencing, over his objection, was erroneous. Finally, Hopkins submits that the jury lacked sufficient evidence upon which to convict him on the firearms charge.
 
 I. Fed.R.Evid. 404(b)
 
 8
 Federal Rule of Evidence 404(b) prohibits the use of evidence of a defendant's "other crimes, wrongs, or acts" to establish the defendant's character "in order to show action in conformity therewith." However Rule 404(b) allows such evidence "for other purposes, such as proof of [a defendant's] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," if the prosecution gives advance notice of its intent to use such evidence. Fed.R.Evid. 404(b). Evidence of past acts must also be relevant, and its prejudicial effects must not substantially outweigh its probative value. Fed.R.Evid. 401, 403.
 
 
 9
 Generally, we review an evidentiary ruling for abuse of discretion. United States v. Vogt, 910 F.2d 1184, 1192 (4th Cir.1990), cert. denied, 498 U.S. 1083 (1991). Because Hopkins objects to this evidence for the first time on appeal, however, this Court reviews only for plain error, Fed. R. Crim P. 52(b), or a denial of fundamental justice. United States v. Olano, 61 U.S.L.W. 4421 (U.S.1993); Vogt, 910 F.2d at 1192; Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir.1985).
 
 
 10
 Rule 404(b) is an inclusionary rule, which allows " 'all evidence of other crimes [or acts] relevant to an issue in a trial, except that which tends to prove only criminal disposition.' " United States v. Masters, 622 F.2d 83, 85 & n. 2 (4th Cir.1980) (quoting J. Weinstein & M. Berger, Weinstein's Evidence Sec. 404, at 404-41, 404-42 (1979)). Because the Government sought to prove Hopkins's knowledge of the marijuana found in the Buick, and his intent to sell marijuana and to conspire, evidence of his prior marijuana trafficking was admissible.
 
 
 11
 United States v. Mark, 943 F.2d 444, 448 (4th Cir.1991). As we have explained:
 
 
 12
 [W]hen intent to commit a crime is at issue, we have regularly permitted the admission of prior acts to prove that element. A criminal defendant, for example, cannot deny knowledge of drug trafficking or an intent to traffic in drugs and at the same time preclude the admission of the government's evidence of prior occasions when he willingly trafficked in drugs.
 
 
 13
 Sparks v. Gilley Trucking Co., 992 F.2d 50, 52 (4th Cir.1993) (citing Mark, 943 F.2d at 448; United States v. Rawle, 845 F.2d 1244, 1247-48 (4th Cir.1988)). Accordingly, we hold that the introduction of this evidence under Rule 404(b) by the district court was not error.
 
 II. Ineffective Assistance of Counsel
 
 14
 Hopkins complains that his attorney was ineffective in failing to object to the admission of Rule 404(b) evidence of Hopkins's prior drug dealing. Because this evidence was admissible, ineffective assistance does not conclusively appear on the face of the record, so this claim is meritless. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3717 (U.S.1992).
 
 III. Relevant Conduct at Sentencing
 
 15
 In making its determinations on sentencing factors, the district court may consider any reliable and relevant information. United States v. Wilson, 896 F.2d 856, 857 (4th Cir.1990); United States v. Roberts, 881 F.2d 95, 105 (4th Cir.1989); United States v. Williams, 880 F.2d 804, 805 (4th Cir.1989). Due process is satisfied if factual evidence relied on has some minimal indicia of reliability beyond mere allegation. United States v. Hicks, 948 F.2d 877, 883 (4th Cir.1991). The Defendant has the burden of showing that information in the Presentence Report which he disputes is unreliable or inaccurate. United States v. Terry, 916 F.2d 157, 162 (4th Cir.1990).
 
 
 16
 Hopkins claims that he was improperly sentenced, due to the inclusion in the Presentence Report of Christenbury's testimony that Hopkins possessed several hundred kilograms of marijuana prior to the time covered by his conviction.[2] We disagree.
 
 
 17
 A sentencing court may consider as relevant conduct under United States Sentencing Commission, Guidelines Manual, Sec. 1B1.3(a)(2) (Nov.1992), "all acts ... that were part of the same course of conduct or common scheme or plan as the offense of conviction," including acts for which a defendant has been acquitted or which were not charged in the indictment. See United States v. Mullins, 971 F.2d 1138, 1144-46 (4th Cir.1992). Application Note 9(B) to Sec. 1B1.3 defines "same course of conduct" as acts "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. Sec. 1B1.3, comment. (n.9(B)). Note 9(B) lists as factors for determining the relatedness of the conduct (1) "the degree of similarity of the offenses[,]" (2) "the time interval between offenses[,]" and (3) the "nature of the offenses." Id. This Court has focused on the "regularity", "similarity" and "temporal proximity" of the acts in question when determining relevant conduct. Mullins, 971 F.2d at 1144.
 
 
 18
 The evidence reveals that Hopkins ran an ongoing marijuana distribution enterprise in Charlotte from 1988 to 1992. His relationship with Christenbury, therefore, is part of the "same course of conduct" as the offense of conviction. See United States v. Roederer, 11 F.3d 973, 979-80 (10th Cir.1993); United States v. Cousineau, 929 F.2d 64, 68 (2d Cir.1991).
 
 
 19
 Hopkins also objects to the sentencing court's reliance on the Presentence Report because it contained hearsay as well as evidence that was not adduced at trial. These concerns are unfounded. A sentencing judge may consider information that is inadmissible or otherwise not introduced at trial. See United States v. Grayson, 438 U.S. 41, 50 (1978); United States v. Roberts, 881 F.2d at 105 (4th Cir.1989); United States v. Lee, 540 F.2d 1205, 1210 (4th Cir.), cert. denied, 429 U.S. 894 (1976); United States v. Burton, 631 F.2d 280, 282 (4th Cir.1980); see also 18 U.S.C. Sec. 3661 (1988). Because Hopkins makes no showing that the factual findings in the Presentence Report are inaccurate, United States v. Terry, 916 F.2d 157, 162 (4th Cir.1990), we affirm his sentence.
 
 IV. Sufficiency of the Evidence
 
 20
 Hopkins claims that there was insufficient evidence to support his conviction for possession and use of a firearm in connection with drug trafficking. This Court will uphold a jury verdict if substantial evidence supports it. Glasser v. United States, 315 U.S. 60, 80 (1942). We inquire whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts established to those sought to be proven. Tresvant, 677 F.2d at 1021. In resolving issues of substantial evidence, this Court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989).
 
 
 21
 Hopkins claims that the presence of the gun in his house is insufficient to establish a violation of 18 U.S.C.A. Sec. 924(c). This position, however, is contrary to established Fourth Circuit law. "Use" under Sec. 924(c) is satisfied by constructive possession, United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991), or actual "presence [of a gun] for protection ..., whether or not it is actually used," United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988); see also United States v. Drew, 894 F.2d 965, 968 (8th Cir.1990). Although Hopkins acknowledges that "mere possession" satisfies Paz, Brockington, and Drew, he invites this Court to abandon its interpretation of Sec. 924(c). We decline, and shall adhere to our existing standard.
 
 
 22
 Citing the "presence and ready availability" test of the Eighth Circuit, Drew, 894 F.2d at 968, Hopkins next insists that the gun was not readily available to him at the time of his arrest. Hopkins avers there was no showing that the gun was operational, and, therefore, available. Moreover, he notes that he was arrested in the parking lot of his apartment complex, but that the gun was found in his bedroom.
 
 
 23
 Hopkins's position on this issue is without merit. The plain language of the statute punishes "[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm." 18 U.S.C.A. Sec. 924(c)(1). Hopkins stipulated that the weapon found in his apartment was a "firearm" as defined by 18 U.S.C. Sec. 232(4) (1988). There is no additional requirement in Sec. 924(c) that Hopkins possess an operational firearm. In addition, Hopkins's brief trip to the parking lot does not preclude a finding that he possessed the firearm. The gun's presence in Hopkins's apartment, where police also found more than a kilogram of marijuana, a safe full of cash, and various drug dealing equipment, is sufficient to establish Hopkins's constructive possession of the gun in conjunction with his drug trade. See United States v. Paz, 927 F.2d at 178-79.
 
 
 24
 Because we find no error by the district court, we affirm Hopkins's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Prosecutors dismissed one of these counts; Hopkins was acquitted on the other
 
 
 [2]
 The sentencing judge attributed to Hopkins between 400 and 700 kilograms of marijuana. Hope testified at trial that he moved only 460 pounds of marijuana (approximately 209 kilograms) from Tucson to Charlotte for Hopkins during the period charged in the second indictment. Thus, the sentencing judge's findings relied in part on marijuana possessed by Hopkins during 1988 to 1991